# WHEELING.

STATE *v.* STRAUDER.

July 20, 1874.

1874.
June Term.

1. In this case, (being an indictment for murder,) this entry appears upon the record of the circuit court, viz: "And at another day to-wit; at a circuit court continued and held for the county of Ohio, at the court house thereof, on the 6th day of June, 1872,

| The State of West Virginia, | Upon an |
| v | indictment for |
| Taylor Strauder | murder. |

On motion of the defendant, and for reasons appearing to the court, this cause is continued until the first day of the next term. HELD.

That it sufficiently appears, by the record, that Taylor Strauder was personally present in court when the motion was made, and the case was continued.

2. The act of the Legislature, approved the 3d day of April, 1873, entitled, "An act providing for the examination of persons charged with felony before the county court," is constitutional, valid, and binding.

3. The said act applies as well to charges of felony pending at the time of its passage and approval, as to those made afterwards; and it also applies to indictments for felony pending in the circuit court, prior to and on the 1st day of January, 1873, and prior to and on the 22d day of August, 1872, which were pending, and on which trials were not had before the passage and approval of the said acts.

4. It is error to put the accused on trial, in a circuit court, on an indictment for felony, before an examination for such felony, according to the provisions of the said act of the Legislature, if it appear that such examination was prayed or required by the accused, before said circuit court, in proper time and manner, before trial, and not afterwards dispensed with, by the accused, by his assent entered of record. And for such error, if there is a conviction, the judgment of the circuit court will be reversed, and

the proceedings had in the cause, after the refusal of such examination, also reversed, and the verdict of the jury set aside, and the accused remanded to the county court of the county in which the felony was committed, with directions to said county court to examine the accused upon, and for the felony in the indictment alleged against him, and to be otherwise proceeded with by the said county court, according to the law in such case made and provided.

This case reaches this Court by a writ of error to a judgment of the circuit court of Ohio county, granted on the petition of Taylor Strauder, the respondent.

The facts appear in the opinion of the Court.

The Hon. Thayer Melvin, judge of said circuit court, presided at the trial below.

*Attorney-General Mathews* for the State.

*Davenport & Dovener* for the respondent.

HAYMOND, PRESIDENT.

At a circuit court held for the county of Ohio on the 20th day of May, 1872, there was found by the grand jury attending said court "A true bill" of indictment against Taylor Strauder for the murder of Anna Strauder in said county of Ohio. The indictment contains three several counts—each count is for the same murder, but they differ somewhat in the description of the offense. On the day the indictment was found, Taylor Strauder was led to the bar of said court, in the custody of the jailor, and he then and there in his proper person demurred to the indictment, and the State, by her attorney, joined in the demurrer. The court upon consideration overruled the demurrer, and thereupon Taylor Strauder plead that "he is not guilty in manner and form as in the indictment against him is alleged, and of this he puts himself upon the country," and the State, by her attorney, did likewise. Afterwards, on the 6th day of June, 1872, at a circuit court of said county this entry was made upon the record of said court in the cause, viz: "The State of West Virginia *v.* Taylor Strauder. Upon

an indictment for murder :　On motion of the defendant and for reasons appearing to this court this cause is continued until next term." Afterwards on the 22d day of October, 1872, Taylor Strauder was again led to the bar of the court in custody of the jailor : And thereupon he moved the court for a continuance of the cause until the next term and the court granted the motion and continued the cause accordingly. On the 6th day of May, 1873, Taylor Strauder was again led to the bar of the court in custody of the jailor : And thereupon Taylor Strauder moved the court to remand him to the county court of Ohio county for examination of him upon the said charge of murder whereof he stood indicted as aforesaid, according to the provisions of the act of the Legislature approved on the 3d day of April, 1873. But the court overruled the said motion and refused to allow Taylor Strauder the examination before the county court of the county of Ohio under said act of the Legislature which he thus prayed and claimed. And Taylor Strauder excepted to the opinion of the court overruling his said motion, and his bill of exceptions was signed, sealed and made a part of the record in the cause. Thereupon came a jury of twelve men who were elected, tried and sworn to well and truly try and true deliverance make between the State of West Virginia and said Taylor Strauder and a true verdict render according to the evidence. The trial of the cause before the jury occupied the 6th, 7th and 8th days of May, 1873. On the day last named the jury found Taylor Strauder guilty of murder in the first degree in manner and form as he stood indicted. Whereupon Taylor Strauder moved the court to grant him a new trial and the court also overruled this motion. Taylor Strauder afterwards on the 8th of July, 1873, and before judgment, prayed the court that judgment on the verdict of the jury, of guilty, be arrested for reasons assigned, which motion was also overruled by the court. The court thereupon rendered judgment upon the verdict of the jury that Taylor Strau-

der be hanged by the neck until he be dead, and that execution of the judgment be done upon him, Taylor Strauder, by the Sheriff of Ohio county on Friday the 29th day of August, 1873, between the hours of ten o'clock A. M., and four o'clock P. M., of that day, "at the usual place of execution."

During the trial of the cause Taylor Strauder excepted to several opinions of the court not hereinbefore referred to, as appears by the record.

A writ of error has been allowed Taylor Strauder to the said judgment of the circuit court, rendered as aforesaid.

It is now for this Court to determine whether there is error in the said judgment of the circuit court, and if so, what disposition should be made of the cause.

Upon a careful examination of each count of the indictment, we are of opinion that the indictment is good and sufficient in law, and that the court did not err in its judgment in overruling the demurrer thereto. Each count of the indictment appears to be in the usual form of indictments for murder in this State, and the State of Virginia, under a statute substantially the same as the statute of this State with reference to murder. Indeed, although the overruling of the demurrer is assigned as an error, in the petition for the writ of error, it was not argued before us by the counsel of Taylor Strauder that the court erred in overruling the demurrer, for the reason that the counsel considered, doubtless, that there was no error in the judgment of the court in that respect.

One of the reasons assigned by Taylor Strauder's counsel why the circuit court should have not rendered judgment on the said verdict is, "because it appears from the record that the prisoner was not present while proceedings were had in his cause." And he here, by his counsel, insists that the circuit court ought not to have rendered judgment upon the verdict as it did, because it appears by the record that the reason so assigned is well founded. To support this proposition, the counsel of Taylor Strau-

87

der here cited us to the entry upon the record of the pro-
ceedings had in the cause on the 16th day of June, 1872,
which I have hereinbefore copied in full.  At the date last
aforesaid, the record shows that "on motion of the de-
fendant, and for reasons appearing to the court," the
cause was continued until the next term.  It is not al-
leged or pretended by the counsel for Taylor Strauder
that the record fails to show that he was personally
present on any other occasion when proceedings were
had or taken in the cause;  but it is argued that
the record does not show that Taylor Strauder was
personally present on the 6th day of June, 1872, when
the cause was continued as aforesaid.  Without now
determining what would be the effect if the fact was as
argued by Taylor Strauder's counsel, we proceed to ascer-
tain whether the record fails to show that Taylor Strauder
was personally present on the said 6th day of June when
the court continued the cause as aforesaid.  The record
states the title of the cause correctly, and then says: "On
motion of the defendant," &c.  When it is considered
that the accused in all cases of felony must plead in per-
son, and that it is required that he shall appear in person,
and that the record shows that on his motion the cause
was, by the court, continued, we are of opinion that the
record sufficiently shows that he was present in court, and
that we are justified in so inferring from the language
employed.  The record, when it says "on motion of the
defendant," is to be taken as meaning that the defendant,
Taylor Strauder, made the motion in court, and not some
other person for him, in his absence, and that he was
personally present at the time.  We must take the record
as true in its recitals in this respect.  The only provision
in our Code in reference to this subject is found on page
718 of the Code, section 2, chapter 159, in which it is
provided that "A person indicted for felony shall be
personally present during the trial therefor."  In *Sper-
ry's Case,* 9 Leigh, 623, Judge Lomax in delivering the
opinion of the court, says: "The well established prac-

tice in England and in this State is, that a prisoner accused of felony must be arraigned in person, and must plead in person ; and in all subsequent proceedings it is required that he shall appear in person." In *Sperry's Case* the record showed that the accused appeared *by attorney*, and there was nothing in the record from which it could be inferred that he was personally present. In the case of *Herker v. The Commonwealth*, the record showed that the accused appeared *by attorney*, and there was nothing in the record to show that he was present. 13 Gratt., 763. The case of *Younger v. The State* is not like the case at bar on this question. 2. W. Va., 579.

We pass now to the consideration of the question whether the court erred in refusing to remand Taylor Strauder to the county court of Ohio county for examination by that court as prayed by him.

It will be seen that the alleged murder was committed, the indictment found, and the plea of not guilty entered to the indictment, prior to the adoption of the present constitution of this State on the 22d day of August, 1872. The plea of not guilty was therefore entered to the indictment before the 3d day of April, 1873, the date of the act providing for examining courts in cases of felony. The act of the Legislature in question is chapter ninety of the acts of 1872 and 1873, and is entitled "An act providing for the examination of persons charged with a felony before the county court."

The first section of the act provides that, "Before any person, charged with a felony, is tried before a circuit court, he shall be examined as hereinafter provided, unless by his assent, entered of record in such court, such examination be dispensed with."

The second section of the act provides that "every such examination shall be had before the county court having jurisdiction of the offense, at one of the terms held for the trial of causes."

The fifth section of the act provides that "upon any such examination, if it appear to the court that there is

not probable cause for charging the accused with the offense, he shall be discharged."

The sixth section provides, that "if it appear, on examination of such person, that a felony has been committed, and that there is probable cause to charge the accused therewith, the court shall remand him for trial in the circuit court having cognizance of the case, take the depositions of all material witnesses on such examination, and require of them, and such as the accused may desire on his behalf, a recognizance for their attendance at the trial."

The seventh, eighth, ninth, and tenth sections of the act provide as follows:

"7. Should the court be of opinion that the accused is entitled to bail, it shall let him to bail if he give sufficient bail, or if he do not then give it, shall enter of record that he is entitled to bail, and in what sum, and he may thereafter be admitted to such bail by any justice."

"8. When a justice admits such person to bail, he shall transmit the recognizance to the clerk of the said circuit court, and issue a warrant for the discharge of such person from jail, upon which he shall be discharged therefrom, if detained for no other cause."

"9. When a person is remanded as aforesaid, by a county court, the clerk thereof shall certify to the clerk of the court in which he is to be tried, copies of all recognizances taken by the said examining court, and to the attorney prosecuting for the State, in the court wherein the trial is to be, a copy of the order remanding the accused, and of the depositions taken on the examination, and of any warrant in the case which remains filed in the clerk's office."

"10. If the court in which a person is examined as aforesaid, discharge him, he shall not thereafter be questioned or tried for the same offense."

It is not necessary to refer to the other sections of the act, as they have no material bearing on the question under consideration.

This act is substantially the same as the act in reference to examining courts which was in force in Virginia at the formation of this State, and for many years before.

It will be seen, that the first section of the act is very broad and comprehensive, and applies as readily to charges of felony existing at the time as after its passage, in the shape of indictments or otherwise. It, in effect, forbids the trial of any person charged with felony at the time of its passage or afterwards. from being tried by the circuit court before he is examined for the offense by the county court; especially is that the effect if the examination is demanded properly and at the proper time. It is true that a statute should be construed by the court as operating prospectively only, unless the words employed show a clear *intention* that it should have a retrospective effect. But this intention is to be found generally in the statute itself. It is to be presumed that language has been employed with sufficient precision to convey it, and unless examination demonstrates that the presumption does not hold good in the particular case, nothing will remain except to enforce it. "When a law is plain and unambiguous, whether it be expressed in general or limited terms, the Legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction." Cooley's Con. Lim. 54 and 62, and authorities there cited. In the case of *Perry v. The Commonwealth*, 3 Gratt. 632, it was decided that the act of February 24th, 1846, changing the mode of summoning and making juries in trials for felony, applies to all cases tried after the act, though the offence was committed, or even the examining court had passed upon the case, before the passage of the act. And also that the constitutional provision forbidding *ex post facto* laws, relates to crimes and punishments, and not to criminal proceedings. The language of the said act of 1846 was no more positive or broad than the act of the 3d of April, 1873. In the case of the *Commonwealth v. Adcock*, 8 Gratt. 661, it was *held* that though an offense

committed before the Code of 1849 went into operation, must, so far as the question of guilt, degree of crime, *quantum* of punishment and rules of evidence, are concerned, be governed by the law in force at the time the offense was committed, yet upon the question of the prisoner's right to be discharged from the failure to try him, arising after the code went into operation, it must be governed by the law of the code. By no possible transmission or arrangement of the words of the said first section of the act of 3d of April, 1873 aforesaid can it be restricted to offenses thereafter committed, charges thereafter made, or prosecutions thereafter commenced. It applies as strongly in its terms to pending charges or indictments as to subsequent charges or indictments for felony. And really, if there is any good reason why an examining court should be had before trial in the circuit court, in case of charges of felony, that reason applies as strongly to pending prosecutions or indictments as to subsequent prosecutions or indictments. But we are not to enquire whether the act of the Legislature in question is a good or a bad law. If the law is valid and applies, we have but one plain duty to perform, and that is to enforce it. This duty we cannot avoid if we desire so to do. As early as 1804 it was decided by the general court of Virginia, that the district court had not original jurisdiction to receive and sustain an indictment for felony, before the indictee had been examined by a court of justices in the manner prescribed by law. 1 Va. Cases 144. In the case of *Hurd v. The Commonwealth,* 5 Leigh 715, it was decided that:

"It is error to put a prisoner upon trial on an indictment for felony, found by the grand jury in a circuit superior court before any examination of him for the offense in the county or corporation court, though such examination be had after the indictment found and before the trial." In *Ford's Case,* 16 Gratt., 547, Judge Allen, in delivering the opinion of the court, in speaking of the examining court, says: "It is in effect nothing more than a more for-

mal examination and inquiry into the facts than could be made by a single justice sitting generally alone, without time to examine carefully, or the aid of counsel to assist his deliberations. Under such circumstances he may err (supposing the facts to be undisputed) upon the question whether in law they make out a felony ; or he may be mistaken as to the facts. As an additional safeguard for the liberty and protection of the accused, the examining court is interposed. It must be satisfied that there is a *corpus delicti*, that a felony has been committed, a proposition in regard to which they can have the benefit of consultation and argument. If satisfied on that point, and that there is probable cause to charge the accused therewith, he is to be remanded for trial. If entitled to bail, they may bail him. But if it appear to the court that there is not palpable cause for charging the accused with the offense, he shall be discharged." Proceedings before grand juries are entirely *ex parte* ; the accused cannot be heard there in person, or by counsel, nor has he the right to send witnesses before the grand jury to prove his innocence. The grand jury must frequently hear but one side of a case, and in consequence thereof they often find indictments against persons which they would ignore if they could hear all the evidence, and in this way innocent persons are often unlawfully compelled to suffer great loss of property as well as character and deprivation of liberty. The accused can be heard more speedily before the examining court than the circuit court, because the terms of the former are more frequent than the latter. Again, the proceedings before the grand jury are not only *ex parte*, but they are, to a great extent, private and secret. When there is no examining court before final trial, the accused is liable to be surprised and injured by the introduction of evidence or witnesses of which he had no knowledge, and often no right to expect or anticipate. An examining court tends to prevent this, and thereby affords an additional security of safety and protection to the innocent,

without injury to the public, or affording immunity from punishment to the guilty.

But it is claimed that the act of 3d of April, 1873, is invalid and void, because it violates the constitution of this State. In support of this claim we are referred to the twelfth and twenty-seventh sections of the eighth article of the constitution of this State. The twelfth section, among other things, provides that the circuit courts shall have jurisdiction of all felonies and misdemeanors. The jurisdiction here conferred is not necessarily exclusive. This is all there is in the section that bears upon the subject. The twenty-seventh section provides that "the county court shall have original jurisdiction in all actions at law, where the amount in controversy exceeds twenty dollars; and also in all cases of *habeas corpus, quo warranto. mandamus,* prohibition, *certiorari,* and in all suits in equity. It shall have jurisdiction in all matters of probate; the appointment and qualification of personal representatives, guardians, committees, and curators, and the settlement of their accounts, and in all matters relating to apprentices; and of all criminal cases under the grade of felony, except as hereinbefore provided. But the jurisdiction of the county court shall be subject to such limitations as may be prescribed by law." It is argued that because this section says the county court shall have jurisdiction of all criminal cases under the grade of felony, that it is an implied prohibition against the Legislature giving the county court any jurisdiction or authority whatever in cases of felony. We are not prepared to admit this proposition as stated, if there were no other provision in the constitution upon the subject. In a free government it is essential that the legislative department should have and exercise very great powers; and it is well settled that the legislatures of the several States of the Union "have conferred upon them, by the people, the full and complete power as it vests in and may be exercised by the sovereign power of any country, subject only to such restrictions

as they may have seen fit to impose, and to the limitations which are contained in the constitution of the United States. The legislative department is not made a special agency, for the exercise of specifically defined legislative powers, but is entrusted with the general authority to make laws at discretion. But the apportionment of this authority does not sanction the exercise of executive or judicial power, except in those cases, warranted by parliamentary usage, when they are incidental, necessary or proper to the exercise of legislative authority, or where the constitution, in specified cases, may expressly permit it." Cooley, Con Lim. 86, 87. The general rule seems to be, that the legislatures of the several States may exercise any power not prohibited expressly or by clear implication, by the constitution of the United States, or of the State. But if the language of the said twenty-seventh section, as quoted, makes it doubtful, when the section is construed alone by its own provisions, as to the power of the Legislature to confer any jurisdiction or authority whatever upon the county courts touching felonies, the twenty-eighth section of the same article provides that "it, (the county court,) shall also have the superintendence and administration of the internal police and fiscal affairs of the county, including the establishment and regulation of roads, ways, bridges, public landings, ferries and mills, with authority to lay and disburse the county levies. It shall, in all contested cases, judge of the election, qualification and returns of its own members, and of all county and district officers; and it shall exercise such *other jurisdiction, and perform such other duties,* as may be prescribed by law." By this section it is made manifest that the Legislature has authority conferred upon it to give to the county courts jurisdiction over other matters and subjects than those expressly or by implication conferred by the constitution. And, taking the two sections together, it is clear that the Legislature

88

may, by law, limit the jurisdiction of the county courts expressly conferred by the constitution, as well as enlarge their jurisdiction and duties beyond the special grants of jurisdiction contained in these sections. This is not only manifest, but it is wise and beneficial. Experience may prove it to be necessary and proper to impose limits, in some respects, upon the jurisdiction of the county courts, specially conferred upon them by the constitution, and to enlarge their jurisdiction and duties in other respects, especially when we know that the thirty-fourth section of the same article authorizes, in certain contingencies, the election of judges to preside at the county courts, and exercise the judicial jurisdiction and powers thereof, instead of the justices, &c.

If the people of the several counties of the State will it, they may, under the provisions of the said thirty-fourth section of the eighth article of the constitution, have judges learned in the law to preside at the county court instead of justices. And these county courts may be made as efficient for all judicial purposes as the circuit courts, and even more so, because the sessions of the county courts are more frequent. If more efficient and able county courts are desired by the people of any county or counties, than they now have, they can easily secure them under the provisions of said section thirty-four.

But it is argued that although the Legislature may have authority to enlarge the jurisdiction and duties of the county courts, as well as to limit the same, and also under these powers to pass the said act of the 3d of April 1873, still the Legislature had no authority under the constitution and schedule to make the same applicable to this case, because the offense was committed, and the indictment found prior to the adoption of the present constitution and prior to the 1st day of January, 1873. And in support of this position the last clause of the thirty-sixth section of the eighth article of the constitution, the last clause of seventeenth section of the schedule,

and the twenty-first section of the schedule are cited. The thirty-sixth section of the constitution and seventeenth and twenty-first sections of the schedule were inserted and adopted to prevent the discontinuance of prosecutions and causes pending in the former circuit courts at the adoption of the constitution, and when the judicial system provided by the constitution took effect; and when the thirty-sixth section says that all civil and criminal suits and proceedings pending before the former circuit courts of the State shall remain and be proceeded in before the circuit court of the proper county, it simply means and was intended to prevent a discontinuance of such causes and proceedings, and that they should remain and be proceeded in, in such manner and under such regulations as were or should be prescribed by law. The proceedings of courts in all classes of cases are, and must necessarily be, prescribed by law as a general rule and be subject to alteration or modification at the pleasure of the Legislature, and it was evidently with this view and intent that the last clause of the thirty-sixth section was inserted. It was not intended by this section to give any greater power or authority to the circuit courts over the cases therein referred to, than any and all other cases over which jurisdiction was conferred upon these courts. To construe this section and the seventeenth section of the schedule as contended for on part of the State would prevent the change of *venue* in that class of cases, under any and all circumstances, and prohibit the Legislature from providing for a change of *venue* under any law, no matter if it was essential to the administration of justice. As to the seventeenth and twenty-first sections of the schedule they are clearly legislative in their character and subject to amendment or modification by the Legislature when in its judgment the security of the citizen or the public good may require it. They are not organic or fundamental in their character and were not intended so to be. This is doubtless not so, as to all the sections of the schedule. Some of them

are and were intended to be fundamental and are beyond legislative reach, as much as any part of the constitution. In the *Richmond Mayoralty case*, 19 Gratt, 712 and 713, Judge Moncure in delivering the unanimous opinion of the court says: "The only office of a schedule is to provide for a transition from the old to the new government, and to obviate inconveniences which would otherwise arise from such transition. The convention acts in this matter as an ordinary legislature, and only because there is necessity for such action before a legislature can or will be convened under the constitution. To be sure, if a convention in framing a schedule should plainly show an intention to place any of its provisions beyond the control of the Legislature, such provision being the act of the representatives of the State without any constitutional restrictions, would be as effectual and binding as if they were embodied in the constitution itself. But unless such an intention plainly appears, the presumption is that the provisions of the schedule are subject to future legislation." These sections being legislative in their character, they may be amended or modified by an act or acts of the Legislature, expressly or by plain implication, as any other legislative act. The act of the Legislature of 3d of April, 1873 does not amend or modify the seventeenth and twenty-first sections of the schedule by express reference thereto, but it does so by plain implication. Statutes which amend others by implication are not affected by the thirtieth section of the sixth article of the constitution; and it is not essential that they even refer to the acts or sections which by implication they amend. Cooley's Con. Lim. 151 and the numerous cases there cited.

The act of the 3d of April, 1873, by its terms operated immediately upon all persons within its scope. Who are these persons? Persons charged with felony. —Such charges might be either then pending, or thereafter made. Does the law confine its operation to one, or embrace both? The language of the law answers

the question. The law declares that "Before any person charged with felony is tried before a circuit court, he shall be examined," &c. Though courts do not favor repeals by implication, yet when the repeal by implication is clear it will be respected. When the punishment affixed by law to an offense after the commission thereof has been modified or lightened in degree by law before the trial of the accused, the accused has the right to elect under which law he will be tried, whether the one in force at the time the offense was committed, or at the time of the trial. 3 W. Va., 706.

The ninth section of the thirteenth chapter of the Code of this State,, which was in force at the adoption of the present constitution, and is still in force, expressly provides that "the repeal of a law, or its expiration by virtue of any provision contained therein, shall not affect any offense committed, or penalty or punishment incurred before the repeal took effect or the law expired, save only that the proceedings thereafter had shall conform, as far as practicable, to the laws in force at the time such proceedings take place, unless otherwise specially provided; and that if any penalty or punishment be mitigated by the new law, such new law may, with the consent of the party affected thereby, be applied to any judgment pronounced after it has taken effect."

The act of the 3d of April expressly gives the accused the right to elect whether he will be examined by the county court upon the charge, or not, before trial in the circuit court; and it is not in the power of the court to deprive him of that right, if he demands it properly and at the proper time. When the accused has demanded that right, and he has not been examined by the county court, or waived the examination, if the demand was made in proper time, the circuit court is unauthorized by law to proceed with the trial against his protestation, as was done in this case. Was the demand for the benefit of the act of 3d of April, 1873, made in proper time? It was made at the first opportunity after the passage of

the act. He could not have made it earlier. It is said, however, that it was made after the accused had plead not guilty. The plea of not guilty was filed before the passage of the act, and he cannot, therefore, be prejudiced in the exercise of his right conferred by law under the act, at the first opportunity, by the plea, especially in a case when not only his liberty, but his life, are put in jeopardy. The court expressly decided that the prisoner was not entitled to an examining court, or in other words, that he was not entitled to the benefit of the act— not because the plea of not guilty was filed, but because the act of the Legislature did not embrace or apply to the accused, or his case. It might have been more formal for the accused to have asked the court for leave to withdraw his plea when he demanded an examination before the county court; but the plea being filed, under the circumstances, could not prejudice the accused in the exercise of his legal right, or in the demand thereof. Murder is a terrible crime.—He who is guilty of murder should be punished therefor to the extent of the law, and with reasonable dispatch. But there is no principle recognized among Christian people, nor is there any law that will or can authorize or justify us as a court to sustain and affirm the judgment of sentence of death against any person, when it appears that his trial and conviction were not had according to the substantial requirements of law. In the eye of the law, no person charged with crime is guilty until so proved upon due and lawful trial according to the substantial forms of law.

The error of the circuit court in refusing the accused an examination before the county court of the county of Ohio upon said charge of murder, is fatal to all the other proceedings in the cause by which the accused was tried, convicted and sentenced to be hung, and the ruling to that effect by this court, renders it unnecessary to determine any other questions decided in the cause by said circuit court, after such refusal, as it may properly be considered that they do not fairly arise in the case for adjudication.

The constitutionality of the said act of the Legislature has received the sanction of the Legislature and of the Governor of the State, for he approved it. Thus the constitutionality of the act has been determined by the legislative and executive departments of the government. In the case of *Ogden v. Saunders*, 12 Wheaton, 270, Justice Washington says: "It is a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body by which any law is passed, to presume in favor of its validity, until its violation of the constitution is proved beyond all reasonable doubt." The constitutionality of a law is to be presumed because the Legislature, which was first required to pass upon the question, and the Executive, who approved the act after its passage by the Legislature, acting, as they must be deemed to have acted, with integrity, and with a just desire to keep within the restrictions laid, by the constitution, upon their action, have adjudged that it is so. They are co-ordinate departments of the government with the Judiciary; and the Legislature passes bills, and the Executive approves them, under the solemnity of an official oath, which it is not to be supposed they will disregard. The most eminent jurists of the Union have held, that when courts are called upon to pronounce the invalidity of an act of legislation, passed with all the forms and ceremonies requisite to give it force of law, they will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light upon the subject, and never declare a statute void unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt. A reasonable doubt must be solved in favor of legislative action, and the act be sustained. Cooley, Con. Lim. 181. *Bridges v. Shallcross*, 6 W. Va., After full and careful examination of the constitution, and the act of the Legislature in question, together with the authorities bearing upon the subject, we do not feel

authorized to declare the act invalid and void, but, on the contrary, we are constrained to hold that said act is valid and binding. While this is so, we do not hesitate to declare that if we were satisfied that the act was altogether unconstitutional beyond reasonable doubt, it would be our duty to so declare and hold.

For the foregoing reasons we are of opinion that the said circuit court of the county of Ohio, erred in its judgment and ruling that the said Taylor Strauder is not entitled to be examined before the county court, of the said county of Ohio, upon and for the charge of murder alleged against him, in the indictment in this cause, before being tried therefor before the said circuit court, and that therefore the said circuit court erred in its judgment rendered in the said cause, on the 6th day of May, 1873, in overruling the motion of the said Taylor Strauder then made to the said circuit court, to remand him to the county court of the said county of Ohio, to be examined by the said county court upon and for the said charge of murder, in the said indictment alleged against him, before trial thereon and therefor, in the said circuit court, according to the provisions of the act of the Legislature approved the 3d day of April, 1873, entitled, "An act providing for the examination of persons charged with felony before the county court," we, being of opinion that, as it appears by the record, the said Taylor Strauder made the said motion to the said circuit court, before the jury was called, elected, tried, and sworn to try the cause, and at the first opportunity he had to make the same after the approval of the said act of the Legislature, the said Taylor Strauder was and is entitled to be examined before the county court of the said county of Ohio, upon and for the said charge of murder before he can lawfully be tried before the said circuit court upon the said charge of murder—he, the said Taylor Strauder, not having plead in bar to the said indictment after the approval of the said act, nor dispensed with such examination in any sufficient manner.

And we are further of opinion that because of the matters aforesaid the said circuit court erred in causing the said Taylor Strauder to be tried before it, upon the indictment aforesaid, at the time it did.

We, therefore, consider that the judgment of the said circuit court of the county of Ohio, rendered in this cause against said Taylor Strauder, on the 8th day of July, 1873, upon the verdict of jury found in the cause whereby the said Taylor Strauder was condemned to death, and also the said judgment and order of the said circuit court in refusing and overruling the said motion of the said Taylor Strauder, and all the proceedings of the said circuit court had in the cause, after his said motion was so refused and overruled, be reversed and annulled, and that the verdict of the jury rendered in the said cause, be set aside.

And this court, proceeding to render such judgment as the said circuit court ought to have rendered upon the said motion of the said Taylor Strauder to be remanded to the county court of the county of Ohio to be examined by said county court upon the said charge of murder in the said indictment alleged against him; it is considered that the said Taylor Strauder be remanded to the county court of said county to be examined by it upon the said charge of murder in the said indictment alleged against him (the said Taylor Strauder) according to the provisions of the act of the Legislature, entitled "An act providing for the examination of persons charged with a felony before the county court," and to be otherwise proceeded with by the said county court according to the law made and provided.

And it is further considered that the said Taylor Strauder remain in the custody of the jailor of the said county upon and for the said charge of murder in the said indictment alleged against him until he shall be examined as aforesaid by the said county court upon and for the said charge of murder, and be further proceeded

89

1874.
June Term.

State
v.
Strauder.

with according to the law in such case made and provided, by the said county court, unless he shall be sooner discharged therefrom by due process of law.

And it is further ordered that the clerk of the said circuit court do, as soon as may be, make and officially certify to the said county court a copy of this order, together with an official copy of the record of the finding of said indictment by the grand jury attending upon the circuit court on the 20th day of May, 1872, and also an official copy of the said indictment, to the end that the said county court may be informed of this order and of the felony upon and for which the said Taylor Strauder is herein directed to be examined before the said county court.

The other Judges concurred.

JUDGMENT REVERSED, VERDICT SET ASIDE, AND CASE REMANDED FOR EXAMINATION IN COUNTY COURT.