# REPORTS OF THE DECISIONS

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA,

## JUNE TERM, 1882.*

---

## WHEELING.

### STATE OF WEST VIRGINIA *v.* CONNERS.

Submitted June 9, 1882—Decided July 1, 1882.

A prisoner convicted of felony obtains a writ of error, and he then escapes from jail and is still at large. In such case the appellate court will order, that the writ of error be dismissed by a certain day, unless it shall be made appear to the court before that day, that the plaintiff in error is in custody of the proper officer of the law.

Motion to dismiss a writ of error to a judgment of the circuit court of the county of Ohio, rendered on the 8th day of October, 1881, on an indictment for burglary in a case in said court then pending, wherein the State of West Virginia was plaintiff, and John Conners was defendant, allowed upon the petition of said Conners.

Hon. Thayer Melvin, judge of the first judicial circuit, rendered the judgment complained of.

*One opinion announced at this term is printed in Vol. XIX.

HAYMOND, JUDGE, furnishes the following statement of the case :

At a circuit court of the county of Ohio, held on the 7th day of September, 1881, the grand jury for the body of said county then attending said court presented an indictment against the plaintiffs in error, John Conners and Frank Shanley, for felony, which indictment contained three counts. The first count charges, that said Conners and Shanley, on the 16th day of August, A. D. 1881, at about the hour of two o'clock in the night-time of that day, feloniously and burglariously did break and enter into the dwelling-house of one John F. Simpson, situated in the said county of Ohio, with intent the goods and chattels of him, the said John F. Simpson, in the said dwelling-house then and there being, then and there feloniously and burglariously to steal, take and carry away, and one twenty dollar United States treasury note for the payment of twenty dollars and of the value of twenty dollars, and one twenty dollar United States currency note for the payment of twenty dollars and of the value of twenty dollars, and other United States treasury notes, and national bank notes, United States currency notes, and divers pieces of silver coin of the United States, and personal property, mentioned in said count, of the values in said count stated, of the goods and chattels, United States treasury notes, United States currency notes, national bank notes, and coin of the said John F. Simpson, in said dwelling-house in said county, there being found feloniously and burglariously did steal, take and carry away, &c.   The second count is substantially the same as the first, except that it is more general in material respects in the description, &c., of some of the things taken.   The third count charges the felonious.breaking and entering of said dwelling-house on the 16th day of August, 1881, in the day-time of that day, with intent the goods and chattels of the said John F. Simpson in the said dwelling-house then and there being feloniously to steal, take and carry away, and one twenty· dollar United States treasury note for the payment of twenty dollars, of the value of twenty dollars, &c., &c., of the goods and chattels, United States treasury notes, United States currency notes, national

bank notes and coin of the said John F. Simpson in the said dwelling-house in the county of Ohio aforesaid, then and there being found feloniously did steal, take and carry away, &c.

On the 4th day of October, 1881, it appears the defendants severed in their defence and asked to be tried separately, which the said circuit court granted; and the said John Conners moved to continue the trial until the next term, which motion was refused. Thereupon the prisoner demurred to said indictment and each count thereof, in which the State by her attorney joined, which demurrer the court overruled, and the said John Conners pleaded not guilty, and issue was thereon joined. Thereupon a jury came, who were elected, tried and sworn the truth to speak, &c., and on their oaths found the prisoner not guilty of the breaking and entering charged, but guilty of grand larceny as charged, and fixed the term of his imprisonment in the State penitentiary at five years. On the 8th day of October, 1881, the said John Conners moved the court to set aside the verdict of the jury and grant him a new trial, which the court refused; and thereupon the court rendered judgment of sentence to the penitentiary upon said verdict. Upon the trial of the cause the prisoner excepted to certain rulings of the court therein and filed his bills of exceptions, which were signed by the court, &c., and the prisoner desiring to apply for a writ of error to the said judgment of sentence, the court ordered that execution of the same be stayed until fifteen days after the commencement of the next term of the Supreme Court of Appeals of this State. Upon the 17th day of December, 1881, the said John Conners upon his petition and assignment of errors therein obtained from this court a writ of error to the said judgment of sentence. On the 9th day of June, 1882, and during the present term of this Court a motion was made in behalf of the State of West Virginia to dismiss the said writ of error, upon the ground that the said John Conners has since the rendition of said judgment of sentence escaped from prison and is still at large, and filed in support of said motion the affidavit of C. P. Brown, sheriff of said Ohio county and as such jailer of said county, from which it appears, that on the 14th day of Feb-

ruary, 1882, the said John Conners escaped out of his custody by breaking the jail of said county, and is now at large as a fugitive from justice, and his whereabouts are unknown to him (said Brown). This affidavit is dated the 7th day of June, 1882. The attorney for said Conners appeared to said motion and waived notice thereof; and thereupon the cause was submitted to the court for consideration upon said motion.

*W. W. Arnett,* for plaintiff in error.

*L. S. Jordan,* for defendant in error, cited the following authorities: 14 Gratt. 677; 20 Gratt. 716; 59 N. Y. 80; 97 Mass. 545; 10 N. Y. 463; 10 Bush 526; 2 Bay 99; 11 East 307.

HAYMOND, JUDGE, announced the opinion of the Court:

The only question to be determined by this Court in this case at this time is, what action it should take upon the motion of the Attorney-General to dismiss the writ of error allowed in this case, upon the ground that the plaintiff in error has escaped from custody, since the writ of error was allowed to the judgment of sentence of the circuit court of Ohio county, and is still at large. So far as I am advised, this is the first time the question involved in said motion has been presented to this Court for decision. It is therefore important, that this Court should carefully consider the principles involved in the motion, not only with reference to this particular case, but with reference to the adoption of correct principles and action in such cases. In order to do this, it is proper and indeed more satisfactory to the legal profession to consult legal authority of credit and respectability upon the subject, than for this Court simply to announce its own conclusions without citing and referring to such authority. I will therefore proceed to consider such authorities, as are before me bearing upon the question under consideration.

In the case of *The People of the State of New York, Respondent* v. *Henry W. Genet, Appellant,* 59 N. Y. 80, it was held according to the syllabus of the case: "It is essential to any step on behalf of a person charged with felony after indict-

ment found, that he should be in custody, either actual by being confined in jail, or constructive by being let to bail. An escaped prisoner can take no action before the court. Accordingly *held*, that an application for a *mandamus* to compel the sealing of a proposed bill of exceptions in a case, where after trial for a felony, of which the accused was found guilty, he had escaped, was properly denied." At pages 81, 82 and 83, Judge Johnson, who delivered the unanimous opinion of the court, says:

"The whole theory of criminal proceedings is based upon the idea of the defendant being in the power and under the control of the court in his person. While the constitution and the statute provide him with counsel, and the statutes give the right of appearance by attorney in civil cases, they are silent in respect to the representation of persons charged with felony by means of an attorney; and in regard to those charged with lesser offences the statutes permit them to be tried in their absence from court only on the appearance of an attorney duly authorized for that purpose. This authority, it has been held, must be special and must distinctly authorize the proceedings. (*People* v. *Petry*, 2 Hilt. 525; *People* v. *Wilkes*, 5 How. Pr. 105.) Even in the absence of statutory regulations this rule has been enforced in the courts of the United States. (*United States* v. *Mayo*, 1 Curtis C. C. 433.) In criminal cases there is no equivalent to the technical appearance by attorney of defendant in civil cases except the being in actual or constructive custody. When a person charged with felony has escaped out of custody, no order or judgment, if any should be made, can be enforced against him; and courts will not give their time to proceedings, which for their effectiveness must depend upon the consent of the person charged with crime. The fact, that in this state the law allows proceedings on writs of error without requiring the actual presence of the criminal in court, does not at all conflict with the view, that steps will not be allowed to be taken on his behalf, when he is no longer in custody or on bail but has fled from the custody of the law. His presence in court is necessary, when he is to be tried, or when some sentence or judgment involving his corporal punishment is to be pronounced. His being in custody is neces-

sary to any step for or against him, except such as may be
taken to bring him again into custody.   All the cases, which
consider the question, seem to concur in the view, that an
escaped prisoner cannot take any action before the court."
(*Commonwealth* v. *Andrews*, 97 Mass. 543; *Reg.* v. *Caud-
well*, 17 Q. B. 503; *Sherman* v. *Commonwealth*, 14 Gratt.
677; *Leftwitch* v. *the same*, 20 Gratt. 716; Anon, 31 Me. 592.)

In analogy to these cases, while proceedings of outlawry
were under former laws the consequence of a defendant-
criminal not appearing in person, he could only have a writ
of error to reverse those proceedings on rendering himself
into custody and coming in person to the bar to pray, that
the writ should be allowed to him (1 Chitty Cr. Law 369;
1 R. L. 167 § 9.)   The provisions of the statutes giving to
defendants in criminal cases the right to make a bill of ex-
ceptions are not so absolute as to displace all the other prin-
ciples, which belong to criminal proceedings, but must be
taken in subordination to them.   We think, they do not re-
quire the courts to encourage escapes and facilitate the
evasion of the justice of the State by extending to escaped
convicts the means of reviewing their convictions.   In the
case of *The State* v. *Conkle alias Swank*, 16 W. Va. 736, it was
held among other things: "1. In a prosecution for felony a
plea of not guilty by an attorney is a nullity; such plea must
be pleaded by the defendant in person; and the record
should show that fact.   2. A person indicted for felony must
be personally present during the trial; and such presence
must be shown by the record." *Sperry* v. *Commonwealth*, 9
Leigh 623; 1 Chitt. Crim. Law 411, 414; 4 Chitt. Cr. Law
268; *Hooker* v. *The Commonwealth*, 13 Gratt. 763; *Pifer* v. *The
Commonwealth*, 14 Gratt. 710; *Queen* v. *Templeman*, 1 Salk.
55; *Duke's case Id.* 400; *Rex* v. *Hann & Price*, 3 Burr. 1786;
*The People* v. *Perkins*, 1 Wend. 91; 3 Rob. (old) Pr. 115, 178,
267; *Younger* v. *The State*, 2 W. Va. 579; Bishop on Crim.
Law § 268; Acts of Leg. Va. (1847–8) 148; Code of Va.
(1860) ch. 208, §3; Code W. Va. ch. 159, § 2; Whar. Am.
Cr. Law, p. 530, § 530; *McQuillen* v. *State of Mississippi*, 8
Smed. and M. (Miss.) Chy. 587,; *State* v. *Strauder*, 8 W. Va.
686, 690.

In the case of *Wilson* v. *Commonwealth*, 10 Bush 526, it was

held according to the syllabus of the case, that "An escaped prisoner convicted of a felony will not be permitted to prosecute an appeal to reverse the judgment of conviction."

Convicted of the crime of murder and sentenced to be confined in the penitentiary for life, the defendant obtained leave to apply to a judge of the court of appeals for an order granting an appeal, and thereafter made his escape. Proof of his escape being made to the court, his appeal is dismissed on motion of the attorney general." In this case Judge Cofer, who delivered the opinion of the court, at pp. 526, 527, says: "The appeal having been granted, the attorney general has entered a motion, based on an affidavit of the deputy sheriff, from whose custody the appellant escaped, to dismiss the appeal, on the ground that as the appellant is not in custody to abide such judgment as may be rendered, he has no right to prosecute the appeal. It seems to us clear both upon principle and authority, that the motion ought to be sustained. The court ought not to do a nugatory act; yet if we proceed to try this appeal, the appellant cannot be compelled to submit to our decision, if it should be against him, and ought not therefore to be allowed to reap the benefit of a decision in his favor. He might thus be enabled to defeat the ends of justice entirely, for he may be able to keep beyond the reach of the officers, until by the death or removal of witnesses or other causes his conviction upon a second trial would be rendered improbable, if not impossible. As he has chosen to undertake to relieve himself by flight in contempt of the authority of the court and of the laws, he cannot also invoke the aid of this court." In this case Judge Cofer refers to the case of *The State* v. *Rippon,* 2 Bay 99, and *Rex* v. *Teal and others,* 11 East 307.

In the said case in 2 Bay the supreme court of South Carolina held substantially, that whenever corporal punishment was either probable or certain, the defendant should be in the presence of the court, before they proceeded to hear a motion for a new trial; and the court refused to hear an argument on the motion but directed, that a bench warrant be issued against the defendant upon his conviction, in order to have him apprehended and brought to final justice.

In said case in 11 East the syllabus is: "All the defendants

convicted upon an indictment for a conspiracy must be present in court, before a motion for a new trial is made on behalf of any of them."

In the case of *Commonwealth* v. *Andrews*, 97 Mass. 543, the syllabus is: "A defendant in a criminal case, in which exceptions are pending, who broke jail and does not appear in person on demand by the Attorney-General to receive judgment on the exceptions, waives all right to be heard therein by counsel." In this case the indictment was for receiving stolen property. At the trial in the superior court the defendant was found guilty and alleged exceptions, which were allowed, and which he was held in jail to prosecute. The case being called in the supreme court of Massachusetts, the Attorney-General suggested, that the defendant had broken jail and was at large, and asked, that he should be defaulted and the exceptions overruled without argument; and Bigelow, C. J., in delivering the opinion of the court, said: "The defendant by escaping from jail, when he was held for the purpose of prosecuting these exceptions and abiding the judgment of the court therein, has voluntarily withdrawn himself from the jurisdiction of the court. He is not present in person, nor can he be heard by attorney. A hearing would avail nothing. If a new trial should be granted, he is not here to answer further; if the exceptions are overruled, a sentence cannot be pronounced and executed upon him. The Attorney-General has a right to ask, that he should be present to receive the judgment of the court. (1 Chit. Crim. Law 663. *Reg* v. *Chaudwell*, 17 Q. B. 503.) So far as the defendant had any right to be heard under the constitution, he must be deemed to have waived it by escaping from custody and failing to appear and prosecute his exceptions in person according to the order of court, under which he was committed."

In the case of *Sherman* v. *The Commonwealth*, 14 Gratt. 677, the syllabus is as follows: "A prisoner convicted of felony obtains a writ of error, which is directed to operate as a *supersedeas;* and he then escapes from jail. The appellate court will discharge so much of the order awarding the writ of error, as directed it to operate as a *supersedeas* to the judgment, and will further direct that the writ of

error be dismissed by a certain day, unless it shall be made to appear to the court by that day, that the plaintiff in error is in custody of the proper officers of the law." In this case John W. Sherman was indicted, tried and convicted in the circuit court of Culpepper county for a felony in advising a slave to abscond from his master, and he was sentenced to six years imprisonment. From this judgment he obtained a writ of error from the court of appeals, which was directed to operate as a *supersedeas* to the judgment. Whilst the case was pending in the court of appeals, the prisoner broke jail and absconded. The Attorney-General then moved the court for a rule upon the prisoner to show cause, why the court should not set aside the *supersedeas* or postpone the hearing of the case, until the prisoner should return to the proper custody. Judge Allen delivered the opinion of the court upon the motion, which is as follows:

"The argument as well of the Attorney-General in support of said rule, as of the counsel who appeared for the plaintiff in error in opposition thereto, having been maturely considered, and it appearing that said plaintiff in error has since the judgment of conviction escaped from custody and is still at large, it is considered by the court that so much of the order awarding the writ of error in this case, as directed it to operate as a *supersedeas* to the judgment of conviction in the petition set forth, be discharged; and it is further ordered, that said writ of error be dismissed on the first day of May next, unless it shall be made to appear to this court on or before the day last aforesaid, that said plaintiff in error is in custody of the proper officer of the law. Ordered, that a copy of this order be certified to the circuit court of Culpeper county."

In the case of *Leftwitch* v. *The Commonwealth*, 20 Gratt. 716, the 4th section of the syllabus is as follows: "The court of appeals will not hear a case where the prisoner has escaped, and is going at large, but will make an order to dismiss the appeal, unless he returns into custody. But having heard and reviewed a case without having been informed of the escape of the prisoner, the court will not afterwards set it aside." In this case the court at page 723 says:

"And although the court, if informed of these facts be-

fore hearing and deciding this case, would have pursued the same course which was pursued by the court in *Sherman* v. *The Commonwealth*, 14 Gratt. 677, and in *Haze* v. *The Commonwealth*, in 1867 (not reported); that is, would not have decided or heard the case, while the plaintiff in error was going at large, but would have made an order, that the said writ of error should be dismissed on a certain day, unless it should be made to appear to this court on or before that day, that the said plaintiff in error was in custody of the proper officer of the law; yet as the case was heard and decided without such information, the court deems it proper not to set aside the judgment entered in this case on yesterday, but to permit the same to stand and remain in full force," &c.

In Virginia "a writ of error in a criminal case does not of itself have the effect of a *supersedeas*: in each case the court will direct by an endorsement, that it shall have that effect." (*Conner* v. *The Commonwealth*, 2 Va. Cas. 30). By the 6th section of chapter 209 of the Code of Virginia of 1860 it is provided, that in criminal cases a writ of error may operate as a *supersedeas* thereto, if the court or judge awarding it so direct, on such terms and conditions as the said court or judge may prescribe. This section is the same as the 6th section of chapter 209 of the Code of Virginia of 1849, p. 780.

The effect of the order of the court of appeals of Virginia in Sherman's case, 14 Gratt. 677, discharging so much of the order awarding the writ of error in the case as directed it to operate as a *supersedeas*, was to leave the judgment of the court below in full force, just as though the judgment of conviction had not been superseded, and of course it was competent to proceed to execute that judgment, notwithstanding the simple writ of error awarded in the case had not been absolutely dismissed. With us a writ of error to a judgment in a criminal case operates as a stay of proceedings in the case until the decision of the Supreme Court of Appeals, when the writ issues from that Court. (Acts of West Va. Leg. 1872–3, chap. 174, sec. 6; Acts of 1882, chap. 128, sec. 2.)

The writ of error does not in fact supersede the judgment of conviction in a felony case, but under our law only oper-

ates a stay of proceedings in the case, after the writ issues, &c., until the decision of the Supreme Court of Appeals. Therefore if a judgment of conviction of a felony be rendered by a circuit court upon a verdict of a jury finding the prisoner guilty of a felony and fixing his term of imprisonment in the penitentiary be not executed, before the writ of error issues, the prisoner is not taken to the penitentiary by the sheriff or other officer, until after the judgment of conviction is affirmed by the Supreme Court of Appeals, &c. If the judgment of conviction is reversed, and a new trial is awarded, then ordinarily the prisoner is again tried for the offence, of which he is indicted, though in some cases for legal cause he is acquitted and discharged of the offence after reversal of the judgment without another trial. But if the prisoner has been delivered in the penitentiary, before the writ of error issues, &c., he remains there to abide the decision and action of the Supreme Court of Appeals upon the writ of error in the case.

If therefore the plaintiff in error should be recaptured or voluntarily return to the custody of the proper officer of Ohio county, he would have to remain in such custody and not be taken to the penitentiary, while his writ of error is pending in this Court. Not so however with Sherman in his case against the Commonwealth, 14 Gratt. 677, after so much of the order awarding the writ of error in his case, as directed it to operate as a *supersedeas* to the judgment of conviction, was discharged by the Virginia court of appeals. After that part of said order was so discharged by the Virginia court of appeals, if Sherman had been recaptured or voluntarily surrendered himself to custody, the judgment of conviction would have been executed against him by confining him in the penitentiary to abide, of course, the decision and action of the court of appeals upon his writ of error.

From what has preceded it is manifest, that there is a material difference in the practice of the courts upon motions similar to the one made in this case, and now under consideration, upon the facts appearing in support of the motion. According to the practice in Kentucky, as shown by the case before cited in 10 Bush 526, and perhaps some other cases, which I have cited, we would be justified in sustaining the

motion and now dismissing the writ of error allowed in the case at bar because of the plaintiff in error having, since the writ of error was allowed in this case, broken jail and escaped from custody, and being now at large by reason of such escape. But the practice of Virginia, before this State became one of the States of the Union, in such cases, and since, as shown by the cases above cited in 14 Gratt. 677, and 20 Gratt. 716, is different and less harsh and perhaps less arbitrary. It seems to me, that this Court should under the circumstances follow the established Virginia practice, as far as may be under the circumstances, unless some good reason is shown, why it should not be followed; and no such reason has been brought to our attention as yet, so far as I am able to perceive.

This practice gives the plaintiff in error further time yet to have the judgment of the court below reviewed by this Court and any material error therein to his prejudice corrected, if any such error exists upon the writ of error pending in this case, if he complies with the order of this Court within the time prescribed. Upon the whole it seems to me that we should not at this time absolutely dismiss the writ of error allowed in this case; but that this Court should now make and enter upon said motion an order in substance as follows: The argument as well of the attorney for the State in support of his motion made at a former day of the present term of this Court to dismiss the writ of error allowed in this case for the reasons in said motion stated of record, as of the counsel, who appeared for the plaintiff in error in opposition thereto, having been maturely considered, and it appearing, that said plaintiff in error has since the judgment of conviction escaped from custody and is still at large, it is ordered, that said writ of error be dismissed on the 7th day of June, 1883, unless it shall be made to appear to this Court, during its present term, or at any subsequent term thereof, which may be held at either of the places prescribed by law for the holding of the sessions of this Court, on or before the day last aforesaid, that the said plaintiff in error is in custody of the proper officer of the law.

The Other Judges Concurred.